J-A14009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| DAMIEN ELWOOD MOTTER | |
| Appellee | No. 1420 MDA 2015 |

Appeal from the Order Entered July 16, 2015
In the Court of Common Pleas of Union County
Criminal Division at No(s): CP-60-CR-0000032-2014
CP-60-CR-0000033-2014

BEFORE: BOWES, OTT AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 22, 2016**

The Commonwealth appeals from the July 16, 2015 order granting Appellee's motion to dismiss pursuant to Pa.R.Crim.P. 600. After careful review, we reverse.

We glean the following facts from the affidavits of probable cause. Appellee was charged at two separate criminal numbers for his alleged involvement in a slew of burglaries. At criminal number CP-60-CR-0000032-2014, Trooper Ty Brininger of the Pennsylvania State Police filed a complaint charging Appellee with multiple burglaries in western Union County. Trooper Brininger learned from Dauphin County law enforcement officials, who were investigating a series of crimes in that county, that suspects in their cases

* Retired Senior Judge assigned to the Superior Court.

were linked to the Union County crimes. The connection was made when search warrants were executed on residences owned by Appellee and another man, Kyle Dyer. During the service of these warrants, several hundred items stolen from multiple victims in Union, Dauphin, and Centre Counties were recovered. Appellee was additionally linked to the Union County crimes through his and Dyer's statements to the police.

At criminal number CP-60-CR-0000033-2014, Richard Todd Martin of the Pennsylvania Department of Conservation of Natural Resources filed charges against Appellee for the burglaries of five privately-owned cabins in Bald Eagle State Forest. Mr. Martin learned of the aforementioned State Trooper investigation and spoke with Dyer, who toured the cabins with Mr. Martin and implicated Appellee. One of the victims of the Bald Eagle State Forest burglaries was Union County Assistant District Attorney Martin Wilson, who is employed by the agency prosecuting Appellee.

Appellee was charged via written complaint for both cases on October 24, 2013. A preliminary hearing was scheduled for December 17, 2013. However, the affiant officers for the respective cases requested a postponement, which was granted. The hearings were thus rescheduled to January 14, 2014, at which time the matter was postponed, at Appellee's request, to January 28, 2014. Appellee waived his preliminary hearings for both cases on that date.

Criminal informations were filed at both cases on March 18, 2014, with a corresponding motion to join the cases with the prosecutions of Dyer. The procedural history following the filing of these charges is somewhat convoluted.[1] On June 11, 2014, the court docketed an order directing the parties to appear on July 14, 2014, for a guilty plea.[2] Appellee, represented by Mark Lemon, Esquire, appeared for that hearing, with Assistant District Attorney Wilson representing the Commonwealth. Attorney Lemon stipulated at a later evidentiary hearing that the Commonwealth had commenced plea negotiations on May 28, 2014, and that he agreed to discuss the plea offer with Appellee. N.T., 8/7/15, at 5. However, all of the parties perceived that since Mr. Wilson was a victim in this matter, he could not represent the Commonwealth at the hearing. Thus, the trial court stated, "It would seem inappropriate to proceed with your case while Mr. Wilson is representing the Commonwealth under these circumstances, plus Mr. Lemon has indicated to me there are a couple details he wishes to discuss about your case with Mr. – with the District Attorney." N.T. 7/14/14,

_____

[1] A chart detailing the events and our ultimate calculations is appended to this memorandum.

[2] According to the Pa.R.A.P. 1925(a) opinion filed in this matter, this is standard practice in Union County. At the hearing, the defendant is given an opportunity to enter a plea or advise that the matter will be set for a jury trial. Trial Court Opinion, 12/15/15, at 2, n.1.

at 2. The court stated it was inclined to continue the proceedings. Significantly, the court asked Appellee if he wished to conduct "your **plea** and sentencing by video," to which Appellee said yes.[3] *Id*. at 3 (emphasis added). The court then asked, "Have you had an opportunity to discuss the advantages and disadvantages to you entering a plea and being sentenced by video with Mr. Lemon?" *Id*. Appellee again responded affirmatively. *Id*. Consistent with these representations, the matter was postponed "until the last day of the next term of court." *Id*. at 4. That hearing, set for September 14, 2014, was rescheduled due to problems arranging the video conference.

On November 3, 2013, an order was issued scheduling another guilty plea hearing for December 8, 2014. However, on November 12, 2014 Attorney Lemon filed a motion to withdraw as counsel. In this motion, counsel represented that Appellee sent a letter declaring his intentions to proceed to trial and to file an ineffectiveness claim if he were found guilty.

The parties appeared for the December 8, 2014 hearing and the court remarked, "The [c]ourt's been informed that [Appellee] is asking that the matter be listed for trial as he has no intentions of entering a plea." N.T., 12/8/14, at 2. Attorney Lemon placed the following on the record:

---

[3] Appellee was incarcerated in a state correctional facility.

> Your Honor, I – Mr. Motter is incarcerated in the state correctional facility. I sent him, and I think he can verify, a filled out plea agreement with correspondence indicating what the plea proposal was from the District Attorney's Office.
>
> Mr. Motter indicated he does not feel he should accept that particular offer and at that point had indicated that he felt that I had not been entirely effective in my representation of him, and I think it's outlined in my motion to withdraw that he would take it to trial and have this case overturned when he filed a PCRA against me for ineffectiveness.

*Id*. at 3. Appellee informed the court that he had previously spoken with Mr. Lemon about filing a suppression motion if a satisfactory plea deal could not be reached. With Appellee's consent, Mr. Lemon withdrew his motion and agreed to file an omnibus motion. Via written order, the trial judge directed Appellee to file the omnibus motion and brief within thirty days, with the Commonwealth's brief to follow ten days after. Additionally, the order set jury selection for January 26, 2015, and further ordered the Deputy Court Administrator to schedule an expedited omnibus hearing prior to jury selection upon filing of the Commonwealth's brief. Order, 12/9/14, at 1.

On December 30, 2014, Appellee filed an omnibus motion and brief seeking suppression of all items recovered from Appellee's residence, as well as all statements made by Appellee. The court issued an order scheduling a two-hour hearing for January 20, 2015. Order, 12/31/14, at 1.

The certified record next reveals that on January 6, 2015, the trial judge issued an order rescheduling the omnibus hearing. There is no

corresponding motion to postpone. The order stated that the "matter is continued by the [c]ourt to allow sufficient time for all the issues to be properly presented. The Commonwealth's time to file a brief is extended by thirty (30) days." Order, 1/7/15, at 1.

The Commonwealth complied with the new deadline, filing its brief on February 3, 2015. The next entry on the docket is March 10, 2015, when the court issued an order rescheduling the omnibus hearing for May 1, 2015. This order did not set a date for jury selection.

On May 1, 2015, the Commonwealth, represented by Assistant District Attorney Philip Sassaman, appeared at the suppression hearing and stated that its sole witness, the trooper who conducted the searches in question, was not present. The trial judge presented two options: he would issue a bench warrant for the trooper's arrest or grant suppression. The Commonwealth did not request the warrant and the judge granted suppression of all evidence recovered from Appellee's residence due to the Commonwealth's failure to meet its burden of proof. The Commonwealth did not appeal.

The trial court thereafter issued an order on May 4, 2015, ordering Appellee to appear for another guilty plea on June 2, 2015. However, on May 28, 2015, Attorney Lemon filed a motion for continuance, stating "Attorney Lemon and the Union County District Attorney are still negotiating the terms of a possible plea agreement." Motion, 5/28/15, at ¶ 5. The

judge granted this request the next day, and the parties were then ordered to appear for jury selection commencing July 27, 2015.

Just one day after requesting the continuance, on May 29, 2015, Appellee filed a motion to dismiss under Rule 600. Despite the numerous indications on the record that the parties were negotiating a plea and the motion requesting more time for negotiations, Appellee averred that he was always prepared to proceed to trial:

> Petitioner, Damien E. Motter, by and through his attorney, Mark H. Lemon, Esquire, Court Appointed Counsel, moves for dismissal of the above matters against him because the Commonwealth has failed to try him within three hundred sixty-five (365) days from the time the written Complaint was filed against the Defendant on October 24, 2013.
>
> Petitioner further avers that he and his attorney were available for trial during that period. **And that the defendant only requested one (1) continuance and caused no other delay during this time period.**

Petition to Dismiss, 5/29/15, at 1 (emphasis added).[4]

The motion was granted following a July 15, 2015 hearing, ultimately resulting in this appeal. However, no evidence was presented at the hearing. The court, frustrated that the Commonwealth was again represented by an attorney with a perceived conflict, placed the following on the record:

---

[4] The one continuance refers to the fourteen-day postponement requested by Appellee at the preliminary hearing.

THE COURT: Some factual things so the record is complete. This is the week of the District Attorney's conference, if I recall. It's also a week that pleas and sentences were scheduled. I don't know that there was an objection to that when the calendar was published.

. . . .

This has been scheduled since June 15th. And I believe, Mr. Wilson, one, it was your cabin, that was allegedly burglarized or victimized in this matter; is that correct?

. . . .

Would you agree that you can't really represent the Commonwealth in these proceedings?

MR. WILSON: I certainly would agree that I have a conflict. My understanding from talking to Mr. Johnson going back to the beginning is that a conflict of an Assistant DA is not a conflict *per se* to the DA, where as opposed to a conflict for the DA is a conflict for the entire office.

And I do know that it should be noted that Mr. Johnson is the one who authored the brief in this matter, and I assume he's the one who's handled everything in this matter; but, again, I've been out of the loop, so I don't really know; and the only reason I am here is just simply because of the absence of other available ADAs.

THE COURT: Since you have been excluded from the case, you cannot even address the due diligence argument as far as whether it should or shouldn't be dismissed; is that correct?

MR. WILSON: The only thing I would state would be what is either on the record or in Mr. Johnson's brief.

N.T., 7/15/15, at 3-5. Following more discussion about the conflict, Appellee objected to ADA Wilson representing the Commonwealth. The prosecutor responded:

MR. WILSON: And may I just add for the record so it's absolutely clear, my presence here today was not out of any

- 8 -

kind of affirmative position on the part of this – on our office. Our office, when we recognized the situation, asked – requested a continuance. And I don't know what role Mr. Lemon played in concurring or not concurring with a continuance, I don't know so I'm not going to say; but I just want the record to reflect that we aren't insisting that this happen here today.

THE COURT: My understanding is Mr. Wilson is the only assistant that stayed back, and that was for whatever procedure.

MR. LEMON: But, Your Honor, on the other hand, as you noted, this was scheduled a good time prior to today, and for the District Attorney's office not to make those arrangements or ask for a continuance – I was contacted after the fact and I was told the Court would not grant a continuance; and I am not – and I want to stress that to the Court and Mr. Wilson – impugning that Mr. Wilson is here out of any other sort of motive than he was the one stuck behind. That's not my client's thought. But be that as it may, I fall back on what I had stated previously.

THE COURT: A motion for continuance was filed in this?

MR. WILSON: No, no. When I pointed out to Tamara, the staff administrator, of the issue, she indicated that she tried to – she communicated to the Court Administrator's office that here was the problem of the dilemma; and my understanding is that she – because of the circumstances, she asked that it be continued. And her feedback was that, no – I guess the answer was no. I don't know why; and I don't know, you know, much more than that.

*Id*. at 7-8. When Mr. Wilson requested a continuance, the judge stated he did not understand why a motion had not been filed and granted the motion to dismiss. *Id*. at 17.

The Commonwealth timely appealed and the matter is ready for our review. The Commonwealth presents three issues:

1. Did the lower court abuse its discretion when it applied rescinded Rule 600 resulting in the inclusion of excludable time

and vice versa where application of new Rule 600 would establish that the Appellee's speedy trial rights were not violated?

2.    Did the lower court abuse its discretion when it attributed delay to the lack of due diligence by the Commonwealth where the delay was also caused by Appellee?

3.    Did the lower court abuse its discretion when it applied rescinded Rule 600 to the period of time where the record reflects that the time was attributed to the lower court; some of this time delay was attributable to court administration; and it improperly used occurrences later in time to find a lack of due diligence earlier in time?

Commonwealth's brief at 4.

Our task is to review the July 16, 2015 order dismissing the petition.

Our standard and scope of review in evaluating Rule 600 issues is well-settled.  We determine

> whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Armstrong*, 74 A.3d 228, 234 (Pa.Super. 2013) (citing

*Commonwealth v. Ramos*, 936 A.2d 1097, 1099 (Pa.Super. 2007) (*en banc*) (alterations in original due to rule renumbering)).  "The proper

- 10 -

application of discretion requires adherence to the law, and we exercise plenary review of legal questions." ***Commonwealth v. Baird***, 975 A.2d 1113, 1118 (Pa. 2009) (citing ***Commonwealth v. Chamberlain***, 731 A.2d 593, 595 (Pa. 1999)). Where the Commonwealth's due diligence is at issue, we apply the following principle:

> As has been oft stated, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort."

***Commonwealth v. Bradford***, 46 A.3d 693, 701–02 (Pa. 2012) (quoting ***Commonwealth v. Selenski***, 994 A.2d 1083, 1089 (Pa. 2010)).

Rule 600, as rescinded and adopted July 1, 2013, requires the Commonwealth to try a defendant within one year of filing the complaint.

> (A) Commencement of Trial; Time for Trial
>
> (1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.
>
> (2) Trial shall commence within the following time periods.
>
>> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600. Both criminal complaints were filed October 24, 2013, thus trial was required to commence on or before October 24, 2014.

The Remedies portion of the Rule states that "When a defendant has not been brought to trial within the time periods set forth in paragraph (A) .

- 11 -

. . [he] may file a written motion requesting that the charges be dismissed with prejudice[.]" Pa.R.Crim.P 600(D)(1). Appellee filed that motion on May 29, 2015. Of course, the mere fact that more than 365 days had elapsed by that point did not automatically entitle Appellee to discharge. The Rule sets forth a particular method for calculating "the time within which trial must commence":

> (C) Computation of Time
>
> (1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600. "[T]he inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence." Comment, Pa.R.Crim.P. 600.

The trial court's computation included each day from the date the complaint was filed through dismissal on July 15, 2015, with the exception of two time periods. The trial court explained its calculation of time as follows:

> In this case 628 days had elapsed from the time of the filing of the Complaint (October 24, 2013) until the [c]ourt dismissed the Complaint on July 15, 2015.
> . . .
> The [c]ourt has excluded from its calculations the time [Appellant] continued the preliminary hearing (January 14, 2014 through January 28, 2014) and September 14, 2014 through December 8, 2014 as stated on Page 37 of the August 7, 2015

transcript. This would be a total of 99 days. This is still a clear violation of Rule 600. The [c]ourt also analyzed whether the Commonwealth exercised due diligence in this matter. The [c]ourt has concluded that it has not.

Trial Court Opinion, 12/15/15, at 5-6.

The Commonwealth's first issue challenges the trial court's inclusion of time preceding the first guilty plea listing on July 14, 2014. The period from October 24, 2013, to July 14, 2014, is a total of 263 days. The trial court included 249 days of that time, subtracting from 263 the fourteen days owing to defense postponement of the preliminary hearing. We begin our analysis there.

The Commonwealth declares that the trial court improperly applied former Rule 600, and maintains that the Rule as rescinded and adopted on July 1, 2013, represents a significant change in the law with respect to the Commonwealth's obligations preceding the first trial listing. Most significantly, the Commonwealth asserts that **only** 28 days of the time period from October 24, 2013, when the complaints were filed, through July 14, 2014, when the matter was first listed for a guilty plea, are included in the 365-day calculation. Commonwealth's brief at 45 ("[A]s of July 14, 2015 one would find that only twenty-eight (28) days of the time had run by virtue of the Commonwealth's continuance.").

We disagree, and find that the trial court properly included 249 days towards the 365-day limit. The comment to Rule 600 makes clear that the

changes were not substantive. "In 2012, former Rule 600 was rescinded and new Rule 600 adopted to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule." Comment, Pa.R.Crim.P 600. The Commonwealth maintains that, in the absence of an indication that it failed to exercise due diligence, none of that time may be included in the 365-day calculation.

> The new Rule 600 obviously removed the concept of "Excusable delay" under former sub-paragraph 'G' and established that "Excludable" time is, for purposes of paragraph 'A', which is what is asserted herein, is all delay except, "delay caused by the Commonwealth when the Commonwealth has failed to exercise due diligence[.]
> . . . .
>
> **There was no delay that was attributable to the Commonwealth which was caused by its lack of due diligence other than the 28 days** between the filing of the complaints and July 14, 2014. Thus two hundred thirty five (235) days should be excluded from the calculation.

Commonwealth's brief at 38, 42-43 (emphasis added). We cannot agree. The July 2013 revision of the Rule did not eliminate the concept of excusable time. Contrary to the Commonwealth's argument, former Rule 600 did not use the phrase "excusable delay." *Ramos*, *supra* at 1102, n.5 (noting that excusable delay is not expressly defined in the text of Rule 600). The excusable delay construct was derived from the language of former Rule 600(G), which

- 14 -

includes an explicit exception, neither explicitly nor implicitly included in Rule 600(E). The additional language provides the Commonwealth with the ability to obtain what this Court . . . termed to be "an extension" of the 365-day time limit, as opposed to a Rule 600(C) "exclusion," to the extent the Commonwealth has exercised due diligence such that circumstances occasioning a postponement are beyond its control

***Commonwealth v. Dixon***, 907 A.2d 468, 474 (Pa. 2006).   Thus, if the Commonwealth exercised due diligence, the 365-day time limit would be artificially extended.   This notion was directly placed into the text of Rule 600(C)(1):

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1).   The critical inquiry, then and now, is whether the Commonwealth was at fault for any delay, and, if so, whether the Commonwealth exercised due diligence during the pertinent time periods.

To repeat, the Rule requires trial to commence within 365 days of filing.

(A) Commencement of Trial; Time for Trial
. . .

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within

- 15 -

>> 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600. Under the Commonwealth's proffered interpretation, none of the time preceding a first listing would ever be included in the (A)(2)(a) calculation, absent a showing that the Commonwealth failed to exercise due diligence.[5] This reading flips the applicable burden. "The Commonwealth has the burden of establishing by a preponderance of the evidence that it exercised due diligence throughout the prosecution." ***Commonwealth v. Roles***, 116 A.3d 122, 125 (Pa.Super. 2015). Since the Commonwealth did not bring Appellee to trial within 365 days of the date the complaint was filed, the Commonwealth bore the burden of showing which periods of delay, if any, should **not** be included under Rule 600(A)(2)(a). The changes to the Rule did not eliminate that requirement.[6]

_____

[5] While the Commonwealth concedes that its twenty-eight day postponement of the preliminary hearing should be included in the 365-day calculation, that concession highlights the errors in its analysis. Under its interpretation of Rule 600, the prosecution could simply not set a preliminary hearing at all, and that time would not be included, since there would be no indication the Commonwealth failed to exercise due diligence.

[6] We note that our Supreme Court granted, on July 19, 2016, a Petition for Allowance of Appeal on a related issue. In ***Commonwealth v. Mills***, 136 A.3d 1028 (Pa.Super. 2016) (unpublished memorandum), we held that the trial court improperly included in the 365-day calculation a period of 187 days from September 27, 2011, which was a status conference date, through April 2, 2012, which was the earliest available trial date. We determined that this block of time was not delay caused by the

*(Footnote Continued Next Page)*

Thus, mindful that we must view the facts in the light most favorable to Appellee as the prevailing party, we hold that the trial court correctly applied the law and did not abuse its discretion. As of July 14, 2014, 263 total days had elapsed, and only fourteen of those days is excluded from the 365-day computation, as the Commonwealth cannot be at fault where Appellee requests the delay (formerly labeled "excludable time"). Therefore, the trial court properly included the remaining 249 days in the (A)(2)(a) calculation. **See** Appendix. Accordingly, the Commonwealth had 116 days remaining in which to try Appellee.

We now address the time periods following the July 14, 2014 guilty plea postponement through December 8, 2014 when Appellant requested a trial. This is a total of 147 days, and the trial court included 48 of these

*(Footnote Continued)* ————————————

Commonwealth, because the delay was due to the trial court's unavailability. Our Supreme Court granted review on the following question:

> Did not the trial court properly grant [P]etitioner's motion to dismiss pursuant to Pa.R.Crim.P. 600, where the time form [*sic*] a scheduling conference to a status listing consisted of time attributable to the conventional progression of a criminal case and was not judicial "delay," and was therefore correctly included in the calculation of the 365 days in which to bring [P]etitioner to trial, and thus where more than 365 days elapsed before [P]etitioner was brought to trial?

**Commonwealth v. Mills**, 141 A.3d 1275 (Pa. 2016). **Mills** may shed light on arguments raised by the Commonwealth regarding what effect the conventional progression of a criminal case has upon the (A)(2)(a) calculation.

days towards the 365-day limit. The Commonwealth asserts that the trial court failed to account for Appellee's role in these delays, and highlights that Appellee contributed to the delays by requesting postponements to negotiate a plea. Appellee counters that, with respect to the July 14, 2014 guilty plea hearing, ADA Wilson could not represent the Commonwealth due to a perceived conflict. In Appellee's view, the Commonwealth did not act with due diligence by having ADA Wilson appear in court for the first guilty plea hearing. Appellee's brief at 10. This scheduling mistake, Appellee avers, justifies including the entire 147 day period spanning July 14, 2014, when the case was postponed, through December 8, 2014, when Appellee requested a trial, in the 365-day calculation.

We disagree. Appellee and the trial court both proceeded from the misapprehension that Appellee did not contribute to these delays. For the following reasons, we hold that none of the 147 days spanning July 14, 2014 through December 8, 2014 is included in the (A)(2)(a) computation.

First, the July 14, 2014 hearing concluded with Appellee agreeing to enter a plea via video, which was scheduled for September 14, 2014, sixty-two days later. Despite stating on the record on July 14, 2014 that Appellee would enter a plea at the next listing, the trial court's opinion retroactively charges these sixty-two days to the Commonwealth, stating

> Of significance, is the fact that Assistant District Attorney Martin Wilson appeared for the Commonwealth at the July 14, 2014 pretrial conference/guilty plea hearing. It was disclosed at that

point that Attorney Wilson, an Assistant District Attorney of many years and personal friend of the District Attorney D. Peter Johnson, was an alleged victim in one of the cases. Mr. Wilson and his wife lease a cabin that was allegedly burglarized by the Defendant. **In spite of the defense requesting the continuance**, **it would have been impossible to proceed on July 14, 2014** as Mr. Wilson could not conceivably represent the Commonwealth and still be a victim of one of the cases.

Trial Court Opinion, 12/15/15, at 2 (emphasis added).[7] We do not find that fact significant. Pursuant to the court's own opinion, the sole purpose of the July 14, 2014 conference was to give the defendant "an opportunity to enter a plea or advise that the matter will be set for a jury trial."[8] Appellee did not

_____

[7] Neither the parties nor the court explored the possibility of Appellee waiving any conflict of interest arising from Mr. Wilson representing the Commonwealth for the limited purpose of accepting a plea bargain negotiated by a completely different prosecutor.

[8] We direct the parties and the trial court to paragraph C of the Rule, which outlines a specific procedure for granting or denying a continuance.

(C) Computation of Time

. . . .

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for

*(Footnote Continued Next Page)*

- 19 -

enter a plea, nor did he request a trial. Instead, Appellee explicitly agreed to enter a plea via video conference, and requested a continuance for that purpose. N.T., 7/14/14, at 4. That hearing was set for September 14, 2014. The trial court included the sixty-two day period from July 14, 2014 to September 14, 2014 in the (A)(2)(a) calculation. This was erroneous, as the defense agreed to the postponement. "If the defense does indicate approval or acceptance of the continuance, the time associated with the continuance is excludable under Rule 600 as a defense request." *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa.Super. 2004) (*en banc*) (quoting *Commonwealth v. Guldin*, 463 A.2d 1011, 1014 (Pa. 1983)). This misapplication of the law constitutes an abuse of discretion.

We next consider the postponement of the September 14, 2014 hearing, which was rescheduled for December 8, 2014. This time period of eighty-five days was excluded from the 365-day calculation, as the court administrator did not arrange a video conference link to Appellee's prison.

*(Footnote Continued)* —————————

> granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

Pa.R.Crim.P. 600(C)(3)(a)(i-ii). Following this procedure would have greatly aided our inquiry.

- 20 -

The court concluded that the Commonwealth was not at fault for this delay, as it did not bear the duty of arranging the link. We agree with the court's conclusion in this regard. Therefore, this eighty-five day time period was properly excluded from the (A)(2)(a) calculation.

We now address the events of December 8. The court commenced the proceeding by stating, "The [c]ourt's been informed that the Defendant is asking that the matter be listed for trial as he has no intentions of entering a plea." N.T., 12/8/14, at 2. Appellee was granted permission to file pre-trial motions and a brief within thirty days. The trial court ordered jury selection for January 26, 2015, with the suppression hearing to precede selection on January 20, 2015.

We summarize our findings to this point. As of December 8, 2014, 410 total days had elapsed from October 24, 2013, the date the complaints were filed. We find that only 249 of these days are included in the 365-day calculation. Thus, as of December 8, 2014, when Appellee first informed the court he wished to proceed to trial, the Commonwealth had 116 days remaining in which to commence trial. Adding the 116 days to December 8, 2014 yields April 3, 2015. Thus, had trial proceeded on January 26, 2015 as originally set by the court, Rule 600 would not have been violated.

Obviously, trial did not occur on January 26. At this juncture we must address Appellee's filing of pretrial motions. In **Commonwealth v. Hill**, 736 A.2d 578 (Pa. 1999), our Supreme Court established that the filing of a

pre-trial motion does not automatically render a defendant unavailable for trial for purposes of the Rule. However, **Hill** established that delay in the commencement of a trial caused by the filing of pre-trial motions is not chargeable to the Commonwealth if the Commonwealth exercised due diligence in responding to the motion.

> If a delay is created, in order to establish that the delay is excludable, the Commonwealth must demonstrate, by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion.

**Id**. at 587 (footnote and citations omitted).

Herein, jury selection was set to commence January 26, 2015, with pretrial motions preceding trial the previous week. Under **Hill**, the time from December 8, 2014, when Appellee requested trial, through January 26, 2015, would be included in the 365-day calculation, absent other circumstances, as commencement of trial would not have been delayed by the motion.[9]

We begin our analysis by setting forth the circumstances surrounding the postponement of the January 20, 2015 suppression hearing. That hearing—and, by extension, the trial—was postponed due to the

---

[9] Our Supreme Court's allowance of appeal in **Commonwealth v. Mills**, 141 A.3d 1275 (Pa. 2016) may address whether any of this time would be included in the first instance. The panel in **Mills** determined, in a substantially similar situation, that none of the time from the pre-trial conference through the actual trial was included in Rule 600's calculation, as the court was unavailable for trial.

Commonwealth requesting additional time to respond to the pretrial motions. The trial court granted that request by order dated January 7, 2015, which states:

> AND NOW, this 6 day of January, 2015, the Omnibus hearing scheduled for January 20, 2015 at 9:30 a.m. is CONTINUED. The Deputy Court Administrator is directed to schedule a hearing in this matter allowing one-half (1/2) day for that purpose. The matter is continued by the [c]ourt to allow sufficient time for all the issues to be properly presented. The Commonwealth's time to file a brief is extended by thirty (30) days.

Order, 1/7/15, at 1. The trial court's opinion adds the following facts regarding this continuance:

> On January 6, 2015[,] in an extremely unusual situation, the [c]ourt continued the Omnibus Motion on an off-record, oral request of the Commonwealth.
>
> The Union County District Attorney was experiencing significant medical issues at the time and the [c]ourt, in retrospect, inappropriately granted the continuance request as a courtesy to the Commonwealth due to the circumstances.
>
> The [c]ourt was informed by the Commonwealth that the two (2) hours allotted by Court Administration for the hearing was not a sufficient amount of time for the hearing.
>
> As a result of the foregoing, [j]ury [s]election on January 26 and 27, 2015 was cancelled **and an Omnibus hearing was scheduled for May 1, 2015** and one-half (1/2) day was allotted for the hearing based on the Commonwealth's representations.

Trial Court Opinion, 12/15/15, at 3.[10]  Attorney Lemon stated he was unaware of the postponement request, N.T., 7/15/15, at 15, and the prosecutor conceded this point when he described the scheduling communication with the judge as *ex parte*.  N.T., 8/7/15, at 20.

We agree that the trial court inappropriately granted the continuance request in that Appellee was not given an opportunity to respond.[11] Nevertheless, the fact remains that the postponement was granted for the express purpose of giving the Commonwealth additional time to respond to the motion.  Obviously, trial could not commence until the pretrial motions

---

[10] We discuss *infra* the effect of the trial court's scheduling the matter on this date.

[11] Code of Judicial Conduct, Rule 2.9(A) states:

(A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:

(1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:

(a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and

(b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

were resolved. The trial court granted a postponement for the Commonwealth to file a brief in response and to prepare its presentation of the issues at an evidentiary hearing. We have reviewed the suppression motion, accompanying brief, and the Commonwealth's response thereto. As Appellee's motion stated, this investigation spanned several counties. The search yielded several hundred stolen items matching various burglaries across multiple counties. The motion challenged the search warrant for Appellee's residence on several grounds and separately challenged the search warrant for co-defendant Dyer's residence, claiming that warrant was invalid, and, to the extent the search of Appellee's residence was based on that information, the later search was excludable as fruit of the poisonous tree. Additionally, the motion complains that the items were not described with sufficient particularity.

Under these facts, we hold that the Commonwealth cannot be found to have failed to exercise due diligence. This suppression motion was not a simple matter, and we think that the Commonwealth put forth a reasonable effort given the complexity of the motion. We observed in *Commonwealth v. Dixon*, 140 A.3d 718, (Pa.Super. 2016), that

> '[T]he Commonwealth must do everything reasonable within its power to guarantee that a trial begins on time,' and the Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. 'As has been oft stated, [d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance

and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort.'

*Id*. at 722-23 (citing **Commonwealth v. Colon**, 87 A.3d 352, 359 (Pa.Super. 2014)). Significantly, the Commonwealth filed its brief on February 3, 2015, just two weeks after the suppression hearing was originally scheduled to commence.

In determining that the Commonwealth exercised due diligence, we must note our disagreement with the trial court's due diligence analysis. The court failed to account for **Hill** and its progeny. Instead, the trial court focused solely on the fact that the Commonwealth's witness failed to appear at the rescheduled May 1, 2015 suppression hearing.

> The [c]ourt also analyzed whether the Commonwealth exercised due diligence in this matter. The [c]ourt has concluded that it has not.
> . . . .
>
> [T]he [c]ourt, in trying to accommodate the District Attorney's Office allowed an oral continuance without a written motion of an Omnibus hearing. The District Attorney was experiencing significant medical issues and the [c]ourt was aware of these at the time and accepted the representations and request for a continuance.
>
> And then, after the hearing was continued to accommodate the Commonwealth, the Commonwealth appeared totally unprepared for the May 1, 2015 hearing. No witnesses appeared for the Commonwealth and only one (1) witness was allegedly subpoenaed resulting in not only the Omnibus Motion being granted but a waste of one-half (1/2) day of [c]ourt time and an unnecessary delay of resolution of the case.

Trial Court Opinion, 12/15/15, at 6-7.

The mere fact that the witness failed to appear does not alone warrant a finding that the Commonwealth failed to act with due diligence in securing his presence. **Commonwealth v. Hyland**, 875 A.2d 1175, 1191–92 (Pa.Super. 2005) ("The Commonwealth cannot be held to be acting without due diligence when a witness becomes unavailable due to circumstances beyond its control."). The trial court failed to consider the Commonwealth's representation that the witness was subpoenaed for the May 1, 2015 hearing and did not appear due to circumstances beyond its control. In any event, it was legal error to retroactively find the Commonwealth did not act with duly diligent efforts back in January, when additional time was requested. The court failed to apply **Hill**, **supra**.

To summarize, we conclude that commencement of the January 26, 2015 jury selection was delayed by the filing of a pretrial motion, and the Commonwealth exercised due diligence in responding to the motion. Accordingly, the forty-nine day period from December 8, 2014, through the trial date of January 26, 2015, is not included in the (A)(2)(a) calculation.

We must now discuss the fact that trial was not rescheduled. Instead, the court rescheduled the suppression motion hearing for May 1, 2015. The trial court issued that order on March 10, 2015. A corresponding jury selection date was not scheduled. The Commonwealth asks us to find all of the time from January 26, 2015 through the ultimate date of dismissal is chargeable to the trial court and court administration. "Here the lower court

- 27 -

is holding the Commonwealth responsible for its clogged dockets. These are delays for which the Commonwealth has no control." Commonwealth's brief at 53. Appellee and the trial court, on the other hand, blame the Commonwealth, stating that the prosecution's Rule 600 computer system did not flag any issues and the Commonwealth "fail[ed] to notify Court Administration of the need for expedited hearing dates." Trial Court Opinion, 12/15/15, at 8.[12]

We agree with the Commonwealth. *Commonwealth v. Bradford*, 46 A.3d 693 (Pa. 2012), illustrates that the Commonwealth may rely on other judiciary offices to fulfill their obligations, including scheduling of motions. In *Bradford*, the Commonwealth initiated charges by filing a criminal complaint. Fifteen days later, a preliminary hearing was held, with an assistant district attorney present. All charges were held for court, but the magisterial district judge, for unstated reasons, failed to forward documents to the Department of Court Records as required by Pa.R.Crim.P. 547(B). The Commonwealth took no further action, because its own tracking system was triggered only upon generation of a "CR Number," which in turn was

---

[12] The trial court cites the testimony of Sue Sees, Deputy Court Administrator, regarding this issue. Trial Court Opinion, 12/15/15, at 7. Ms. Sees, however, was testifying to any communications with the Commonwealth regarding scheduling plea hearings. As we have explained, the Commonwealth's failure to expedite that hearing is no failure at all, given our conclusion that all of that time is not included in (A)(2)(a).

created only when papers were forwarded as required by Rule. Bradford filed a motion to dismiss one day after the Rule 600 time limit expired. The Commonwealth, then aware of the case, attempted to list the matter for trial.

On appeal to our Supreme Court, the issue was whether the Commonwealth exercised due diligence under former Rule 600(G) by relying upon the magistrate office's compliance with the rules of criminal procedure. ***Bradford*** determined that the district attorney's office could validly rely on the minor judiciary fulfilling its own obligations:

> We do not find it unreasonable for the District Attorney to have relied upon the Magisterial District Judge's compliance with the Rules of Criminal Procedure to trigger its internal tracking system. While we might question the Commonwealth's diligence if it devised its system to be launched upon a district judge's adherence to a self-designed custom or practice, we conclude that here the District Attorney's office exercised due diligence when it relied upon the minor judiciary following the specific, mandatory Rules of Criminal Procedure, which placed upon the District Judge the obligation to transmit timely papers to the common pleas court.

***Id***. at 704-05 (footnote omitted).

Here, as in ***Bradford***, the duty to schedule a suppression hearing fell upon the judiciary. Rule of Criminal Procedure 581, Suppression of Evidence, states that:

> (E) A hearing shall be scheduled in accordance with Rule 577 (Procedures Following Filing of Motion). A hearing may be either prior to or at trial, and shall afford the attorney for the Commonwealth a reasonable opportunity for investigation. The judge shall enter such interim order as may be appropriate in

the interests of justice and the expeditious disposition of criminal cases.

Pa.R.Crim.P. 581.  Rule 577, in turn, states that

if the judge determines the motion requires a hearing or argument, **the court or the court administrator shall schedule the date and time for the hearing or argument**. Pursuant to Rule 114(B)(2), notice of the date and time for the hearing or argument shall be served by the clerk of courts, unless the president judge has designated the court or court administrator to serve these notices.

Pa.R.Crim.P. 577(A)(2) (emphasis added).  Additionally, paragraph (B) states the judge shall promptly dispose of any motion.

We acknowledge that in **Commonwealth v. Sloan**, 67 A.3d 1249 (Pa.Super. 2013), we concluded that the Commonwealth cannot blindly rely upon the minor judiciary.  Therein, the Commonwealth charged the defendant via complaint dated July 30, 2008, yet did not file the criminal information until May 11, 2009.  Sloan was then arraigned on June 22, 2009.  The next day, the trial court's arraignment office scheduled a pre-trial conference for July 31, 2009, which was one day after Rule 600 expired.  The assistant district attorney, recognizing the pending deadline, contacted the assigned public defender.  The parties appeared in court on July 30, 2009, and the judge set trial for August 27, 2009.  **Id**. at 1253.

Sloan moved for dismissal under Rule 600, which the trial court denied, finding that the Commonwealth was not responsible for the

arraignment office's failure to take notice of the Rule 600 run date. *Id*. at 1254. On appeal, we reversed and distinguished the case from *Bradford*:

> In *Bradford,* the Pennsylvania Supreme Court determined that "all of the delay in bringing the case to trial" had resulted from "the District Judge's failure to forward the documents to the Court of Common Pleas in compliance with Pa.R.Crim.P. 547(B)." *Bradford,* 46 A.3d at 702. In the present case, however, the delay was caused by the Commonwealth failing to file the Information until May 11, 2009. It is the Commonwealth's responsibility to file the information after the defendant has been held for court following a preliminary hearing. Pa.R.Crim.P. 560(A). In this case, that occurred on September 11, 2008, but the information was not filed until May 11, 2009. Significantly, the Rules of Criminal Procedure provide that the formal arraignment and pretrial conference cannot be held until after the filing of the information. *See* Pa.R.Crim.P., 570, 571.
>
> Further, in *Bradford,* the Supreme Court, in determining that the Commonwealth had exercised due diligence, relied on the fact that Rule 547(6) of the Rules of Criminal Procedure had a specific, mandatory requirement for the district judge to timely transmit the papers to the Common Pleas Court. *Bradford,* 46 A.3d at 704–05. *See* Pa.R.Crim.P. 547(6). In contrast, Rule 570, relating to the pretrial conference, does not contain a similar time-limited, mandatory requirement. *See* Pa.R.Crim.P. 570(A).
>
> Unlike Rule 547, relied upon by the trial court in *Bradford,* Rule 570 contains no specific time limit within which the pretrial conference must be scheduled. Thus, we conclude that it was not reasonable for the Commonwealth in this case to rely upon the arraignment clerk to schedule the pretrial conference properly within the parameters of Rule 600.

*Id*. at 1254 (footnote omitted). We find that the instant case is more akin to *Bradford* than *Sloan*. Unlike the Rule at issue in *Sloan*, the applicable procedures squarely place the burden of scheduling motions hearings on the trial court. We do not suggest that the Commonwealth is completely free of

any obligation to monitor a case after filing a response to pre-trial motion. We hold only that under these circumstances, where the court issued an order scheduling a hearing a little over a month after the Commonwealth filed its brief in response to the suppression motion, the Commonwealth is not to blame for the resultant days. Where a delay in trial is caused by a response to the pre-trial motions, the Commonwealth must establish it exercised due diligence in opposing or responding to the motion. *Hill*, *supra* at 587. The Commonwealth diligently responded to pretrial motions that, by necessity, delayed trial, and validly relied on the court to schedule the hearing. Following the submission of the briefs, the case was ready to proceed to hearing and trial pending the court's scheduling those matters. We also note that Union County employs only two judges: the trial judge herein and a senior judge.[13] It is unsurprising that the court was unable to accommodate the parties until May. Therefore, we hold that none of the time from January 26, 2015, through May 1, 2015, is included in the 365-day calculation. Accordingly, the number of days included in the (A)(2)(a) calculation towards the 365-day limit remained at 249 days.

Finally, we turn to the events following May 1, 2015. The trial court granted the suppression motion and the Commonwealth did not appeal. For

---

[13] http://www.unioncountypa.org/departments/courts/court-of-common-pleas/court-of-common-pleas/page.aspx?id=1349

reasons that are not apparent in the record, the trial court did not schedule a corresponding trial date until after the suppression hearing concluded. Order, 5/4/15, at 1. This order did not schedule a trial, instead ordering the parties to appear for a plea. However, on May 28, 2015, Attorney Lemon requested a continuance, representing that the parties were still negotiating a plea. Motion, 5/28/15, at ¶ 5. That order was granted, and Appellee then filed the motion to dismiss, leading to this instant appeal. Consistent with our analysis of *Hill*, we hold that any delay in commencing trial was delayed due to these additional pretrial motions. Hence, we again conclude that none of the time following May 1, 2015, is included in the (A)(2)(a) calculation.

Having concluded only 249 days is included in the 365-day calculation, the trial court erred in dismissing the motion under Rule 600. When the trial court granted the motion to dismiss on July 16, 2015, the Commonwealth still had 116 days remaining in which to try Appellee. We therefore reverse and remand for further proceedings consistent with this memorandum.

Order reversed. Jurisdiction relinquished.

Judge Ott joins the Memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/22/2016</u>

**APPENDIX**

| Event # | Dates | Activity | # of days | Included in calculation? | Number of days elapsed |
|---|---|---|---|---|---|
| 1 | 10/24/13 | Complaints filed | - | - | 0 |
| 2 | 10/24/13-12/17/13 | Case progression; preliminary hearing set for 12/17/13 | 54 | Yes | 54 |
| 3 | 12/17/13-1/14/14 | Hearing (postponed per Commonwealth request) | 28 | Yes | 82 |
| 4 | 1/14/14-1/28/14 | Hearing (postponed at Appellee's request) | 14 | No | 82 |
| 5 | 1/28/2014 | Preliminary hearings waived | - | - | 82 |
| 6 | 1/28/14-3/18/14 | Case progression; criminal information filed 3/18/14 | 49 | Yes | 131 |
| 7 | 3/18/14-7/14/14 | Case progression; guilty plea hearing set for 7/14/14 | 118 | Yes | 249 |
| 8 | 7/14/14-9/14/14 | Guilty plea hearing (rescheduled for further plea negotiations) | 62 | No | 249 |
| 9 | 9/14/14-12/8/14 | Guilty plea hearing (rescheduled due to difficulties arranging video conference) | 85 | No | 249 |
| 10 | 12/8/14-1/26/15 | Guilty plea hearing (Appellee requests trial and time to file omnibus motion) | 49 | No | 249 |

| 11 | 1/26/15 | Jury trial scheduled (postponed) | - | - | 249 |
|----|---------|----------------------------------|---|---|-----|
| 12 | 1/26/15-2/3/15 | Hearing postponed per Commonwealth's request; additional time needed to reply | 8 | No (Commonwealth at fault, but exercised due diligence) | 249 |
| 13 | 2/3/15 | Commonwealth files brief | - | - | 249 |
| 14 | 2/3/15-3/10/15 | Court takes no action | 35 | No (court delay) | 249 |
| 15 | 3/10/15-5/1/15 | Court issues order on 3/10/15 scheduling hearing for 5/1/15 | 52 | No (court unavailability) | 249 |
| 16 | 5/1/2015 | Suppression hearing; motion granted | - | - | |
| 17 | 5/1/15-7/16/15 | Additional pretrial motions, including motion to dismiss | 76 | No (litigation of pretrial motions) | 249 |